■ MIRKIN AND GORDON, P. C., Respondent, v SUFFOLK COUNTY—LOCAL 852 CIVIL SERVICE EMPLOYEES ASSOCIATION LEGAL SERVICES FUND, Appellant.—In an action, *inter alia,* to recover damages for breach of contract, defendant appeals from an order of the Supreme Court, Nassau County (Meade, J.), entered January 11, 1984, which denied its motion to dismiss the complaint on the ground of res judicata pursuant to CPLR 3211 (a) (5).

Order affirmed, with costs.

In 1975 the County of Suffolk contracted with the Suffolk

County Chapter of the Civil Service Employees Association (hereinafter CSEA) to create the CSEA Welfare Fund (hereinafter welfare fund) for the purpose of providing certain benefits to members of the CSEA in accordance with the terms of their collective bargaining agreement. The welfare fund was to be jointly administered by an equal number of trustees designated by the CSEA and the County. On May 4, 1977, the CSEA Legal Services Fund (hereinafter legal services fund) was established, and entered into a retainer agreement with a law firm to provide prepaid legal services to its beneficiaries. (The present plaintiff is a successor of that law firm and unless otherwise indicated, the term "plaintiff" shall be used collectively to refer to both the present plaintiff and its predecessors.) This agreement and a subsequent agreement dated June 25, 1979 purported to extend the term of plaintiff's retainer until 1982.

On August 14, 1979, the Suffolk County Legislature authorized the formation of a special committee to investigate allegations that moneys belonging to the welfare fund were being misused. The committee thereafter conducted public hearings, subpoenaed and inspected documents, and heard the testimony of former trustees. As a result of its investigation, the committee apparently concluded, *inter alia,* that the law firm had engaged in the practice of overbilling and other unprofessional conduct. Plaintiff denied having overbilled the fund, and claimed that the public statements issued by the committee were baseless accusations which served to damage the personal and professional reputations of the members of the firm.

Apparently convinced that the committee was created in order to discredit the law firm and to induce the termination of its retainer agreement so that the legal business generated by the beneficiaries of the fund could be awarded to "politically friendly Suffolk attorneys" for "personal and political advantage", plaintiff and certain of its individual members commenced a lawsuit in Federal court against certain county legislators and trustees of the welfare fund. They alleged in that action that the defendants had engaged in an unlawful conspiracy to deprive them of their constitutional rights in violation of 42 USC § 1983, by utilizing public investigative agencies to further their own personal and political interests, and by defaming them in the course thereof. Thereafter, on February 1, 1980, the plaintiff law firm was formally terminated as the contract provider of legal services to the legal services fund.

In the Federal lawsuit, defendants subsequently moved unsuccessfully to dismiss the complaint for failure to state a cause of action. In his decision denying defendants' motion Judge Platt stated that "[f]rom the facts alleged in their amended complaint plaintiffs seem to be saying that the defendants acting in concert with the Trustees of the legal services fund terminated the plaintiffs' legal relationships with the fund and thereby deprived them of substantial legal fees." He noted, however, that "the formal termination of plaintiffs' relationship with the fund was by the Trustees thereof", who were not named in that capacity in the Federal action. Nevertheless, the absence of such parties was held not to compel dismissal, since "we do not have here an indispensable party motion * * * and it is difficult to say categorically at this juncture that plaintiffs' proof may not show one or more violations of 42 U.S.C. § 1983 *et seq.*", as distinct from any contract claim. The Federal action then proceeded into the discovery phase, but due to plaintiffs' repeated failure to comply with various discovery orders, a final judgment dismissing the complaint was entered. Pursuant to Federal Rules of Civil Procedure, rule 41 (b) (in 28 USC, Appendix), and contrary to the prevailing practice under New York State law, this dismissal operated as an adjudication on the merits.

Although neither the legal services fund nor its trustees was named as defendant in the Federal action, prior to the dismissal thereof, certain Federal defendants, characterizing themselves as acting in their capacities as trustees of *both* the welfare fund and the legal services fund, sought to interpose counterclaims against the plaintiffs as well as against certain trustees of the legal services fund who had signed the retainer agreement on behalf of the fund. The court, however, following dismissal of the complaint, refused to exercise its ancillary jurisdiction to retain these claims stating that "no 'judicial economy' or 'convenience' would be served by permitting the Fund defendants access to a federal forum on their purely state law claims".

Meanwhile, on June 8, 1983, the plaintiff law firm instituted the present action in the Supreme Court, Nassau County, against the legal services fund, alleging that the fund had breached the terms of its retainer agreements, and that it had refused to make payment for services previously rendered. The complaint asserted four causes of action, predicated on theories of breach of contract and quantum meruit, and demanded aggregate damages in a sum exceeding $2.5 million.

The legal services fund subsequently moved to dismiss the

complaint in this action on the ground that the Federal dismissal was res judicata on the issues raised in the State court action. Special Term denied the motion stating, *inter alia,* that "although the ultimate injury alleged [in the complaint] was termination of the agreement, which was also the bottom line in the prior action, the federal action alleged entirely different acts, as opposed to alternative theories, performed by different defendants". The legal services fund appeals from this order.

In *Matter of Reilly v Reid* (45 NY2d 24, 27), the Court of Appeals acknowledged that "[i]t is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action' ". The court realized however that there is no easy way to define the phrase "same cause of action" for res judicata purposes, and therefore adverted to the policy considerations underlying the concept of claim preclusion. Thus, the court observed (p 28) that res judicata was "designed to provide finality in the resolution of disputes to assure that parties may not be vexed by further litigation", but cautioned that "[i]n properly seeking to deny a litigant two 'days in court', [the] courts must be careful not to deprive him of [even] one". Naturally, a fundamental prerequisite to the invocation of res judicata is that the litigant against whom the doctrine is sought to be invoked must have been able to litigate the issues in the prior action (*see, Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304).

Notwithstanding the legal services fund's argument that the breach of contract claim is predicated on the same facts which underlay the Federal civil rights action, and therefore constitutes the "same cause of action" for purposes of res judicata, it is nonetheless clear that no decision relative to the merits of the State action was ever rendered by the Federal court, nor was jurisdiction thereof ever assumed. Moreover, although a Federal court's assumption of pendent jurisdiction to hear State law causes of action arising out of the same facts as the Federal claim is discretionary (*see, United Mine Workers v Gibbs,* 383 US 715), a *sine qua non* is that the Federal court would have been *willing and able* to consider the State law theories advanced (*see, Heimbach v Chu,* 744 F2d 11, 14, *cert denied* — US —, 105 S Ct 1842).

Plaintiff, however, never named the legal services fund nor any of its trustees acting in their representative capacities as defendants in the Federal civil rights action. Moreover, the Federal court implicitly acknowledged that it could not, in the absence of joinder, exercise jurisdiction over the legal services

fund in that action. While certain of the Federal defendants attempted to assert counterclaims in the Federal civil rights action, in their representative capacities as trustees of *both* the legal services fund and the welfare fund, we note that all of these counterclaims were ultimately dismissed. In addition, pursuant to Federal Rules of Civil Procedure, rule 13 (in 28 USC, Appendix), a party may only assert as a counterclaim claims which do not require for their adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Since an independent basis for jurisdiction over the legal services fund was lacking in the Federal action, preclusive effect may not be given to the disposition in the Federal forum (*see, Aldinger v Howard,* 427 US 1, 14-17; *LaRocco v City of New York,* 468 F Supp 218; *Leopold v Birkett,* 523 F Supp 525). In this regard, the observations of this court in *Salwen Paper Co. v Merrill Lynch, Pierce, Fenner & Smith* (72 AD2d 385, 391) are worth reiterating here: "As a formulation of judicial policy, it is of course desirable that matters once decided should not be the subject of further litigation. It is equally a formulation of judicial policy that litigants should be entitled to present their claims in a forum having jurisdiction and obtain a decision relative to the merits of the claims. A reconciliation of both policies can be made in this case by separating what in truth was decided in the prior litigation from what was not. Matters excluded from consideration in a prior suit cannot be removed from a later suit under the doctrine of *res judicata* * * * The application of *res judicata* vis-à-vis is the discretionary exercise of Federal pendent jurisdiction presents complex analytical problems * * * [H]owever * * * the Federal courts did not exercise pendent jurisdiction over the claims now asserted by the plaintiff, and the plaintiff should have the opportunity to litigate those claims in the State courts."

In sum, since plaintiff cannot be barred from litigating the merits of its present claims against the legal services fund by the prior dismissal of the Federal action, the order appealed from is affirmed. Thompson, J. P., Brown, Weinstein and Kunzeman, JJ., concur.